BANK OF SEARCY v. BALDOCK.

Opinion delivered May 1, 1922.

1. EVIDENCE—RELATIONS OF CO-SURETIES ON NOTE.—Where the relation of suretyship exists between joint promisors upon a bill or note, their relation may be shown for the purpose of establishing their relative equities as against each other.

2. PRINCIPAL AND SURETY—RIGHT TO CONTRIBUTION.—The reciprocal obligation of sureties to contribute proportionately to the payment of the principal debt does not depend upon an express contract between them, but is founded on principles of equity as a liability growing out of the mutual relationship.

3. EVIDENCE—RELATIONS OF CO-SURETIES.—It may be shown that of two sureties on a note one signed as accommodation for the other and the maker.

4. MORTGAGES—MORTGAGEE AS INNOCENT PURCHASER.—A mortgage executed by one tenant in common to plaintiff, conveyed only such rights as the mortgagor had, which were subject to a prior mortgage by both tenants in common, and the mortgagee in the subsequent mortgage was not an innocent purchaser as to equities which might arise between the two co-tenants as to the surplus funds after the foreclosure of the prior mortgage.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. N. Rachels,* for appellant.

Mrs. Hall and Mrs. Phillips were co-sureties for Hall on the Quattlebaum debt and were each liable therefor. One surety cannot take advantage of another so as to be relieved of joint liability. 147 Ark. 530. Mrs. Phillips is estopped from claiming that the debt must be paid by Mrs. Hall because she did not assert her claim and stood by and permitted the Bank of Searcy to take a mortgage upon Mrs. Hall's interest in the proceeds of the sale.

Where there is more property included in a trust deed than is sufficient to satisfy the debts, a pursuing creditor may file a bill to have the trust closed, and the proceeds applied first to the payment of the trust debts, and the excess to the satisfaction of complainant's debts. 18 Ark. 172; 18 Ark. 508.

As between parties having liens upon two funds, the holder of the prior lien may be compelled to first exhaust the fund upon which the other party has no lien. 72 Ark. 29.

*Brundidge & Neelly,* for appellee.

Appellee was not a co-surety with Mrs. Hall but an accommodation surety at the instance of Mrs. Hall. And the Quattlebaum debt should be satisfied out of Mrs. Hall's share of the proceeds. See 13 R. C. L. 1133; 94 Ark. 335, and cases there cited.

McCULLOCH, C. J. Alpha Smith (then unmarried) and Mrs. Eva Hall, wife of J. W. Hall, were the owners, as equal tenants in common, of certain real estate in the city of Searcy, which they inherited from their father, and which they occupied as their homestead.

J. W. Hall was engaged in the mercantile buiness in Searcy, and borrowed money from one Quattlebaum in the sum of $500, and executed his note for the same. Mrs. Hall and Miss Smith signed the note as joint makers and executed a deed of trust on said real property to appellee

Baldock as trustee to secure the payment of the debt to Quattlebaum. J. W. Hall was also indebted to appellant Bank of Searcy on a note in the sum of $1,000, executed to appellant, with certain other parties as sureties.

When the debt to appellant became due, an extension of time was granted in consideration of the execution by Hall and his wife of a mortgage on the latter's undivided half interest in said real estate to secure the payment of the debt to appellant. This mortgage was executed subsequent to the aforesaid deed of trust executed to secure the Quattlebaum debt.

The Quattlebaum deed of trust was foreclosed by appellee as trustee under the power of sale contained in the deed, and the property was purchased at the sale by T. J. Phillips, with whom Miss Alpha Smith had intermarried, and the price paid by Phillips for the property at the sale was $1,350, which, after paying the Quattlebaum debt, left a surplus of something more than $800.

Mrs. Hall then executed and delivered to appellant a written order, which constituted an assignment, directing appellee, as trustee, to pay over to appellant the sum of $420, which was about half of the surplus proceeds in the hands of appellee after paying off the Quattlebaum debt. Appellee refused to pay the same to appellant, stating that he would hold the proceeds subject to a settlement of the controversy between Mrs. Hall and Mrs. Phillips concerning the right to said surplus.

This action was brought by appellant in the chancery court of White County against appellee to compel the latter to pay over to appellant the amount of surplus funds in the appellee's hands covered by the order held by appellant from Mrs. Hall.

The contention of appellant is that Mrs. Hall and Mrs. Phillips were co-sureties for Hall on the note executed to Quattlebaum, that the surplus in excess of the amount paid in satisfaction of the Quattlebaum debt should be equally divided between said co-sureties, and that appellant was entitled to receive, under the order from Mrs. Hall, the latter's half of said surplus.

On the other hand, the contention of appellee, who defends under the rights and at the instigation of Mrs. Phillips, is that Mrs. Phillips was not a co-surety with Mrs. Hall, but that she was an accommodation surety at the instance of Mrs. Hall herself, and that the Quattlebaum debt should be satisfied out of Mrs. Hall's share of the proceeds of the foreclosure sale.

Appellant also contends that, even if the contention of appellee is sound with respect to the controversy between Mrs. Phillips and Mrs. Hall with reference to the division of the fund, this has no application as against the rights of appellant, who holds a mortgage on Mrs. Hall's undivided half interest, subject only to the prior Quattlebaum mortgage, and that appellant is not bound by any equities arising between the two owners of the property with respect to the distribution of the surplus fund.

Our conclusion is that appellant's contention on both propositions is unsound. Upon the issue of fact in the case, the testimony is with appellee. Mrs. Phillips testified, and she is not contradicted, that she executed the note at the earnest solicitation of both Hall and his wife, and that they both assured her that she would not be called upon to pay any part of the debt.

The evidence was sufficient to warrant the finding that Mrs. Phillips (Miss Smith, as she then was) did not execute the note as a co-surety with Mrs. Hall, but that it was the intention of the parties that she should merely sign the note and execute the mortgage as surety for Mrs. Hall as well as for Hall himself. On the face of the note itself, Mrs. Hall and Miss Smith were joint makers—not indorsers so as to make them liable in succession as between themselves.

We have often held that "where the relation of suretyship exists between joint promisors upon a bill or note, their relation may be shown as between themselves." *Vestal* v. *Knight,* 54 Ark. 97; *Hamiter* v. *Brown,* 88 Ark. 97; *Reed* v. *Rogers,* 134 Ark. 528; *Colvin* v. *Glover,* 143 Ark. 498.

The principle thus announced is sufficiently broad in its scope to permit co-sureties to prove their relations to each other for the purpose of establishing their relative equities as against each other.

The reciprocal obligations of sureties to contribute proportionately to the payment of the principal debt does not depend upon an express contract between them, but is founded upon the principles of equity as a liability growing out of the mutual relationship. *Weaver-Dowdy Co.* v. *Brewer,* 127 Ark. 462; *Reed* v. *Rogers, supra.* The true state of relationship, however, between co-sureties may be proved for the purpose of establishing their equities as between themselves. Within the operation of this principle, it was competent to show that, while Miss Smith and Mrs. Hall both signed the note, not as joint makers, but as sureties for J. W. Hall, it was not intended between themselves that Miss Smith should be a co-surety with Mrs. Hall, but that she was to be deemed an accommodation surety for both Hall and his wife. The effect of this was to show that, as between the parties themselves, Mrs. Hall was to be treated as a principal debtor and Miss Smith as a surety.

Appellant is in no better attitude in this case than Mrs. Hall would be if she were claiming the fund, for appellant, under its mortgage from Mrs. Hall and the order from her for the payment of the fund, merely stepped into her place, and appellant can claim only such equities as Mrs. Hall could assert.

The mortgage executed by Mrs. Hall to appellant only conveyed what rights she had in the property itself, which was subject to the prior mortgage to Quattlebaum, and appellant, by accepting the mortgage, was not an innocent purchaser as to the equities which might arise between the two owners in the surplus funds after the foreclosure of the mortgage.

The mortgage, or deed of trust, executed by the two tenants in common to Quattlebaum did not constitute a severable incumbrance upon the moieties owned by the several owners, but was given jointly as security for the

whole debt.   Therefore, Mrs. Hall's half interest in the property was bound for the whole debt, and appellant in accepting the subsequent mortgage from Mrs. Hall did so with notice of the fact that the Quattlebaum deed was a superior incumbrance, and it is therefore not an innocent purchaser as against the equities of the owner of the other half of the land.   In other words, the equities of Mrs. Phillips were superior in point of time and must prevail over those of appellant.

The decree of the chancery court was therefore correct, and the same is affirmed.